<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ——————————————— : | |
| CHAPLAIN TOY-LING WASHINGTON,   : | |
| agent for principal BEVERLY KNIGHT   : | |
| and NICHOLAS TART, son of Plaintiff and : | |
| minor as applies,   : | |
| : | |
| Plaintiffs,   : | |
| : | Civ. A. No. 06-3102 (SRC) |
| v.   : | |
| : | **OPINION** |
| TOWNSHIP OF HILLSIDE CITY   : | |
| COUNCIL, et al.,   : | |
| : | |
| Defendant.   : | |
| ———————————————: | |

<u>**Chesler, U.S.D.J.**</u>

        This matter comes before the Court on the seven motions to dismiss filed by several

Defendants to this action and the motions for default as to certain Defendants filed by *pro se*

Plaintiff, Chaplain Toy-Ling Washington.  The Court has considered the papers filed in support

of and in opposition to the motions, and for the reasons discussed below, the Court grants

Defendants' seven motions to dismiss and denies Plaintiff's motions for default.

**I.  Background**

        Plaintiff initiated this action on July 11, 2006, on behalf of herself and as principal for

Beverly Knight and as guardian for her son, Nicolas Tart.  In the original complaint, Plaintiff

named the following defendants: Township of Hillside City Council, Hillside Clerk Janet

Vlaisavljevic, Dwayne Warren, the Hillside Police Department, and John Doe Officers ("the

Hillside Defendants"); Union County Prosecutor's Office, Theodore Romankow, Casey Kim,

David Nechamkin, and Vincent Gagliardi ("the Prosecutor Defendants"); The Devereux

Foundation, Brenda Brunisholz, and Heather Hanlon ("the Devereux Defendants"); Wachovia

Bank, N.A. and PNC Bank ("the Bank Defendants"); New Jersey Multicare Center of

Workmen's Circle, Inc. and Kathy Negry ("the Multicare Defendants"); Catholic Charities and

Yorlano Massenberg ("the Catholic Charities Defendants");  Donald Vanarelli ("Vanarelli"),

Ann Rubin, Katherine Stalker, Owen Thomson, American Express, Susan Lubin, Simone Marta,

Yassheeda Johnson, and the parents of Jasmin Glass on behalf of their minor child.  Plaintiff also

filed an amended complaint "against the Defendants," Vanarelli, the Devereux Foundation, and

Romankow, and adding the Union County Sheriff's Department.  (Amended Complaint).

     In November 2007, Plaintiff was convicted by a jury in the Superior Court of New Jersey,

Union County for stealing more than $166,000 from Beverly Knight.  She is currently

incarcerated.

     In the original complaint, Plaintiff alleges several violations of her rights as provided by

the First, Fourth, Eighth, Thirteenth, and Fourteen Amendments to the United States

Constitution, and the rights provided to her under the New Jersey Constitution.  (Complaint at 2).

As best the Court can decipher from the original complaint, Plaintiff appears to assert that many

of these alleged violations of her rights are in retaliation to her political activities and her efforts

on behalf of her non-profit organization, Community Life Services.  Plaintiff argues that as a

result of her political involvement, several of the Defendants harassed her and her son, invaded

her privacy, removed Beverly Knight from her care, and conspired to bring criminal charges

against her.  Plaintiff also asserts that she was improperly terminated from her position at the Devereux Foundation.

Specifically, Plaintiff contends that she "exposed flagrant voter fraud" and exposed the ineligibility of unnamed incumbents.  (Complaint at 4).  Plaintiff complains that when she "ran for public office" the Hillside Police "threaten[ed] to arrest children giving out palm cards at the polls."  (*Id.*)  Plaintiff also contends the windows in her home were broken, and that the Hillside police "acting in concert with the Union County Prosecutor[']s office" placed threatening phone calls and placed those with whom she did business under surveillance.  (*Id.*)

In May 2005 Plaintiff ran for the position of Councilperson at Large for the Township of Hillside.  (Complaint, Ex. A at 2, 33-34).  Plaintiff was not elected, and later in May 2005 Plaintiff filed a complaint in the Superior Court of New Jersey, Union County, asserting corruption in the voting process.  (*Id.*)  Plaintiff sought, in part, a recount of all ballots cast and an inspection of the voting machines.  (*Id.* at 19-20).

Plaintiff contends that, after the 2005 election, she revealed that one Councilperson at Large for the Township of Hillside did not live in Hillside, thus causing him to resign. (Complaint at 4).  Plaintiff then sought to fill this opening, but she "was denied petitions for nomination of city council member at large[] by the Hillside [C]lerk's office, as well as an interview for [the] vacant city council seat" in violation of Article I, Sections 1 and 2 of the New Jersey Constitution.  (*Id.*)

In September 2005, Plaintiff filed motion for an order to show cause to compel the Clerk of the Township of Hillside to issue and accept for filing after the deadline an official petition for nomination to the vacated seat of Councilperson at Large for the Township of Hillside.

(Complaint, Ex. A at p. 2-12).  Plaintiff contends that when she sought review by the Appellate

Division of the Superior Court of New Jersey, "she was falsely arrested . . . without an

indictment [in violation of her] 14th amendment rights."  (Complaint at 4).  Plaintiff asserts this

arrest was part of a conspiracy "by" the Union County Prosecutor's Office, "who, acting 'under

the color of authority, coerced other persons named in this suit to comply'" in violation of

Plaintiff's rights as protected by the First, Fourth, Thirteenth and Fourteenth Amendments, as

well as her rights provided by "Title[s] I, V, and VI" and Article I of the New Jersey

Constitution.  (*Id.*)  Plaintiff also seems to allege the officers discriminated against her because of

her role as a Chaplain, and that they arrested her in retaliation for her actions as a whistle blower.

(*Id.*)

Plaintiff further complains that the Union County Prosecutor's Office "grossly invaded

[her] privacy by using grand jury subpoenas" to access Plaintiff's bank accounts in the course of

the criminal investigation of Plaintiff's involvement with Beverly Knight.  (Complaint at 4).

Plaintiff contends the conspiracy is further evidenced by the fact that the prosecutors informed

those who conducted business with Plaintiff that "she stole 145,000 from an elderly woman," and

advised these people "not to tell Plaintiff about . . . receiving her personal information."  (*Id.*)

Plaintiff also alleges "defendants engaged in tort[i]ous interference of contract of durable

power of attorney held by Plaintiff [when] they removed Beverly Knight" from Plaintiff's care

and placed her in Multicare.  (*Id.*)  Plaintiff contends these actions violated Ms. Knight's rights

as guaranteed by the First Amendment and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e,

*et seq*.  (*Id.*)  Plaintiff also argues that Defendant Yorlano Massenberg, a licensed social worker

employed by Catholic Charities' Adult Services Division, engaged in tortious interference "by

helping to remove Beverly Knight" and by "help[ing] her to find another attorney," namely, Donald Vanarelli.  (*Id.*)  Plaintiff asserts that Mr. Vanarelli had himself appointed power of attorney for Ms. Knight after having her "deemed insane."  (*Id.*)

Plaintiff contends that after Ms. Knight was removed from her care, members of the Union County Prosecutor's Office conspired with Plaintiff's employer to obtain Plaintiff's personal records in violation of her Fourth and Fourteenth Amendment rights.  (*Id.*)  When Plaintiff inquired about the release of her information, she contends that her employer subjected her to a hostile work environment and discriminated against her because of her race and gender.  (*Id.*)  Plaintiff also argues that her employer terminated her employment "without due process."  (*Id.*)

Plaintiff also asserts that Defendant Simone Marta "tricked Plaintiff into leaving her store so she could fax a copy of [P]laintiff's documents to the Prosecutor['] s [O]ffice."  (*Id.*)  However, Plaintiff does not identify the name of the store, nor does she describe the nature of the "documents" faxed to the Prosecutor's Office.  Plaintiff also complains that Defendant Susan Lubin falsely reported that "Beverly Knight never touched her money before she met Plaintiff."  (*Id.*)  According to Plaintiff, this statement violated her rights as protected by the Fourth and Fourteenth Amendments to the United States Constitution and Articles One, Three and Seven of the New Jersey Constitution.  (*Id.*)

Plaintiff also complains that her son, Nicholas Tart was choked by a teacher, suspended from school without cause, precluded from participating in "certain school activities," asked not to run for class president, forced to share the position of class president, and that his accomplishments were not included in the school yearbook.  (*Id.* at 3).  Plaintiff further alleges

that certain unnamed defendants who are "members of a gang" known as the "Hillside Crew"

"assaulted, menaced, and stalked" Nicholas.  (*Id.*)  Plaintiff alleges that she reported this to the

police, but, in violation of the Equal Protection Clause, the police refused to investigate, did not

allow Plaintiff to press charges, and advised her that if Nicholas defended himself, he "was going

to be arrested."  (*Id.* at 3-4).  According to Plaintiff, Nicholas was also "falsely arrested for a

crime," with "no complaining witnesses."  (*Id.* at 3).  As a result of the false charges, harassment,

and lack of protection, Plaintiff contends Nicholas is "not allowed to come home to Hillside."

(*Id.*)

On January 10, 2007, Plaintiff filed an amended complaint,[1] adding  the Union County

Sheriff's Office and "parties unknown to the plaintiff" as defendants.  Plaintiff also alleges

additional complaints against Vanarelli, Romankow, and The Devereux Foundation, including

false arrest, conspiracy, and violations of the Racketeer Influenced and Corrupt Organizations

("RICO" ) Act, 18 U.S.C. § 1961, *et seq*.  Plaintiff also asks the Court to enter judgment

"declaring her rights" as power of attorney for Beverly Knight, "Pursuant to 4:83 The Uniform

Power of Attorney [A]ct and The Forensic evaluation of Beverly Knight[']s Competence."

(Amended Complaint at 1).

The following defendants subsequently filed the seven motions to dismiss, which are

addressed in turn below: the Bank Defendants [docket item 21]; the Devereux Defendants

[docket items 54 and 92]; the Catholic Community Services Defendants [docket item 63]; the

---

[1]Although Plaintiff titled this document an amended complaint, because Plaintiff is *pro se* and the document appears to add claims to the original complaint rather than replace it, the Court will treat it as a supplemental complaint and reviews the claims raised in both documents in this Opinion.

Multicare Defendants [docket item 68]; Defendant Vanarelli [docket item 72]; the Prosecutor Defendants [docket item 93]; and the Hillside Defendants [docket item 95].

Plaintiff also filed two motions for default judgment. [Docket items 54 and 56]. On August 1, 2007, Plaintiff filed an initial, and unsigned, motion seeking default judgment against the Hillside Defendants, the Devereux Defendants, the Multicare Defendants, Katherine Stalker, Owen Thompson, Susan Lubin, American Express "Aka Ameriprise", "Yahseeda" Johnson, Simone S. Marta, and the parents of Jasmine Glass. [Docket item 54]. On the same day, Plaintiff filed another motion for default. [Docket item 56]. In support of this second motion, Plaintiff filed an affidavit stating that a copy of the summons together with a copy of the complaint was served upon each of the defendants named in the first motion for default. However, on the form of order submitted with the second motion, without explanation, Plaintiff crossed out the names of the Hillside Defendants.

The Hillside Defendants submitted a response noting that they presume the motion requesting default judgment against them to be withdrawn. (Hillside Defendants' opposition letter dated August 9, 2007). The Devereux Defendants and the Multicare Defendants both submitted opposition to the motion for default asserting that Plaintiff failed to effectuate proper service.

## II.  Discussion

## A.      Legal Standard

In review of a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party.  *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim.  *See In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 397-98 (3d Cir. 2000).

The general rule for pleading a claim is stated in Federal Rule of Civil Procedure 8(a)(2), and requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (alteration in original) (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Id.* at 1965.  Therefore, in examining a complaint under Rule 12(b)(6), a court must determine whether it contains "enough factual matter (taken as true)" that the "allegations plausibly suggest[]" that the pleader is entitled to relief.  *Id.* at 1965-66.  A pleading's factual allegations are thus evaluated for sufficiency under a "plausibility standard."  *Id.* at 1968.  This standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" that the pleader is entitled to relief.  *Id.* at 1965.

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n. 8 (3d Cir. 1997).  All reasonable inferences, however, must be drawn in the plaintiff's favor.

*Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir. 1987).  Moreover, the claimant must "'set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that the elements exist.'"  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 340 (2d ed. 1990)).  "The defendant bears the burden of showing that no claim has been presented."  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).


**B.**     **Plaintiff's Standing to Represent Beverly Knight**

The Court first addresses whether Plaintiff has standing to assert any claims on behalf of Beverly Knight – an issue raised by the Multicare Defendants and Defendant Vanarelli.  The Multicare Defendants' argue that Plaintiff does not have standing to assert any claims on behalf of Ms. Knight because: (1) Plaintiff does not have Power of Attorney to act on behalf of Beverly Knight, and (2) Plaintiff has been convicted, and is currently incarcerated for stealing from Beverly Knight.  Defendant Vanarelli argues that Plaintiff has failed to demonstrate either the constitutional or the prudential requirements to establish standing for the claims Plaintiff presents on Ms. Knight's behalf and therefore any claims filed on behalf of Ms. Knight must be dismissed.

As evidence of the change in power of attorney, the Multicare Defendants point to Defendant Vanarelli's power of attorney, issued on February 3, 2006, which contains a provision revoking all powers of attorney previously issued on behalf of Ms. Knight.  (Multicare Df. Br., Ex. D ¶ 2).  Defendant Vanarelli's power of attorney is signed by Ms. Knight and two witnesses and is also notarized.  (Id. at 4).  The Multicare Defendants also submitted a Judgement for

Appointment of Conservator dated May 25, 2006, issued by the Honorable Thomas N. Lyons,

Presiding Judge of the New Jersey Superior Court, Chancery Division, which identifies

Defendant Vanarelli as "court-appointed counsel for Beverly Knight."  (Multicare Df. Br., Ex. D

¶ 2 and E).

      Plaintiff's assertion that Ms. Knight's signature is forged on the Vanarelli power of

attorney, without any evidence in support of her allegation,[2] is insufficient to overcome the

evidence demonstrating the validity of the power of attorney.  Under New Jersey law a power of

attorney is revoked when the principal has signed and acknowledged by a notary public "a

written instrument of revocation."  N.J.S.A. 46:2B-8.10. *See also* N.J.S.A. 46:14-2.1 (to

acknowledge or prove a power of attorney a principal or witness must appear and swear before

"an officer," such as an attorney or notary public, that she or he executed the instrument or

witnessed the principal execute the instrument).  Here, the Vanarelli power of attorney is a

written instrument of revocation that conforms with the requirements of N.J.S.A. 46:2B-8.10 and

N.J.S.A. 46:14-2.1.  Therefore, Plaintiff's power of attorney to represent Ms. King has been

revoked.  Because Plaintiff's power of attorney has been revoked, she lacks standing to assert any

claims on behalf of Ms. Knight, accordingly, any such claims must be dismissed.


**B.  Bank Defendants' Motion to Dismiss**

---

      [2]Plaintiff did submit a letter drafted by Anne Veree, who holds the position of "Questioned Document Examiner," in which Ms. Veree states that she compared the signature of Beverly Knight on two documents related to Vanarelli's Power of Attorney with six other documents and found them not to be signed by the same person.  However, the letter does not identify the other six documents, and, more importantly, does not state which documents were found to be signed by Ms. Knight and which were presumed to be forged.  Therefore, this document is not considered in deciding this motion.

The Bank Defendants argue that "the plaintiffs have failed to allege any facts against Wachovia and PNC which are sufficient to meet the requisite elements of any of the causes of action alleged in their complaint," and therefore seek dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff opposes the Bank Defendants motion to dismiss, arguing that because she is a *pro se* litigant, the Court must liberally construe her complaint.  In her opposition, Plaintiff asserts that the Bank Defendants "in agreement with co-defendants faxed and mailed private bank statements that belonged to the plaintiff and her princip[al], without their knowledge or consent . . . with reckless disregard for the Plaintiff's protection."  (Pl. Br. in Opposition to Bank Dfs. [docket Item 37], at 3).

Because Plaintiff is a *pro se* litigant, the Court holds her pleadings to a "less stringent[] standard than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 521 (1972); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003).  Even applying this more lenient standard, the complaint only sets forth one factual allegation regarding the Bank Defendants:

> Union [C]ounty Prosecutors went past crimes committed by the Beverly Knight[']s son Perry Knight, and others evidence before the plaintiff knew Beverly Knight such as identity theft and stolen money . . . and investigations of bank fraud from PNC Bank and Wachovia Bank.  (suppression of evidence) Prosecutors grossly invaded Plaintiff Washington's privacy by using grand jury subpoenas to go into her bank accounts as well as Beverly Knight[']s accounts . . . . [and] validating the conspiracy by telling these entities "not to tell plaintiff about their receiving her personal information."

(Complaint at 4).  Plaintiff's amended complaint does not name, or mention, the Bank Defendants.  Although Plaintiff identifies countless causes of action in her response to the Bank Defendants' motion to dismiss, Plaintiff's "obligation is to provide the 'grounds' of h[er]

'entitle[ment] to relief.'" *Bell Atlantic*, 127 S. Ct. at 1964-65.  The most lenient reading of the complaint provides that Plaintiff is asserting that the Bank Defendants violated Plaintiff's rights by producing evidence of her bank accounts in response to grand jury subpoenas.  This simply does not support a cause of action.

First, the United States Supreme Court has found that under the United States Constitution, "an individual has no 'legitimate expectation of privacy' in bank records possessed by a bank."  *United States v. Miller*, 425 U.S. 435, 442, 445 (1976).  Therefore, Plaintiff has no recourse under the federal constitution to challenge the government's acquisition of her bank records from their banks.  *See id.* at 445; *United States v. Payner*, 447 U.S. 727, 732 (1980).

To the extent Plaintiff claims the Bank Defendants violated the Right to Financial Privacy Act, 12 U.S.C. § 3401 et seq. ("RFPA"), and conspired to violate the same, such a claim does not survive a motion to dismiss.  The RFPA only limits the access of "Government authorit[ies]," defined as "any agency or department of the United States, or any officer, employee, or agent thereof."  12 U.S.C. §  3401(3); 12 U.S.C. § 3403(a).  Accordingly, because the RFPA does not restrict access by state law officials, and the Bank Defendants responded to a subpoena issued as part of an investigation conducted by state officials, Plaintiff has no recourse under this provision.

Nor has Plaintiff set forth facts that will support a claim under the New Jersey Constitution.  Although the New Jersey Constitution provides citizens of the state a reasonable expectation of privacy in bank records, the New Jersey Supreme Court has held that "grand jury subpoena procedures sufficiently protect that expectation of privacy."  *State v. McAllister*, 184 N.J. 17, 19 (2005).  As the New Jersey Supreme Court explained: "Providing notice to account

holders that their bank records are part of an investigation may encourage some unscrupulous individuals to drain the account, flee the jurisdiction, or otherwise frustrate the investigation." *Id.* at 39-40.  Therefore, to protect the interests of justice, New Jersey relies upon a "grand jury process – bounded by relevancy and safeguarded by secrecy – " which conforms to the state constitutional jurisprudence.  *Id.* at 42.  Because the Bank Defendants responded to grand jury subpoenas, Plaintiff cannot assert that her privacy rights as protected by the New Jersey Constitution were violated.

Accordingly, the Court finds that even the most lenient reading of Plaintiff's complaint fails to demonstrate a claim against the Bank Defendants for which relief can be granted. Therefore, the complaint shall be dismissed as to the Bank Defendants.

### C.  Multicare Defendants

The Multicare Defendants' have also filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting Plaintiff has failed to set forth any facts to support a claim upon which relief can be granted.  The Multicare Defendants also seek dismissal pursuant to Rule 4, because Plaintiff failed to effectuate proper service of the summons and complaint, and because Plaintiff failed to effectuate service within 120 days of filing the complaint.  For the same reason, Mutlicare Defendants also argue Plaintiff's motion for default judgment must be dismissed.

Plaintiff responded to the motion, arguing that the Multicare Defendants conspired with "other named defendants to deprive Plaintiff and Beverly Knight" of rights and privileges as provided by the constitutions of the United States and New Jersey.  It appears that Plaintiff

argues her claims against the Multicare Defendants should survive because the Muticare

Defendants acted in concert with state officials and therefore acted under the color of law.

In response to motion to dismiss for failure to timely or properly serve the Multicare

Defendants, Plaintiff argues that she effectuated proper service because service on a "managing

or general agent" of a corporation is sufficient, even if the agent does not have authority to accept

service.  Plaintiff further contends that her claims should not be dismissed as untimely because

the United States Marshals Service was charged with effectuating service, pursuant to 28 U.S.C.

§ 1915, and therefore Plaintiff had no control over the timeliness of service.

In the original complaint, Plaintiff asserts the Multicare Defendants "engaged in tort[i]ous

interference of a contract of durable power of attorney held by plaintiff, they removed Beverly

Knight against her will to Multi care Nursing home where she was charged 3,300 biweekly to

reside [in] violation[] of her 1st amendment rights, and VII Civil rights."  (Complaint at 5).

Plaintiff demanded that "Multi Care refund Bevery Knight[']s Money in full, for a stay she did

not ask for," and that Kathy Negry "be brought up on charges for elder abuse in exploitation and

civil rights violations.  In connection with the removal and detention of Beverly Knight for

money purposes."  (Complaint at 6, ¶ 11).  The Multicare Defendants are not mentioned in the

amended complaint.

The most liberal reading of the complaint fails to articulate any facts that will support a

claim against the Multicare Defendants.  As stated above, Plaintiff does not have standing to

assert a claim on behalf of Ms. Knight, so her allegation that the Multicare Defendants removed

Ms. Knight from Plaintiff's care against Ms. Knight's will must be dismissed.  For the same

reason, the demand that Defendant Negry "be brought up on charges for elder abuse in

exploitation and civil rights violations" must also be dismissed.

Plaintiff's claim that the Multicare Defendants engaged in tortious interference must also be dismissed because Plaintiff failed to provide sufficient "grounds" to support her alleged "entitlement to relief." *See Bell Atlantic,* 127 S. Ct. at 1964-65. Under New Jersey law, a claim of tortious interference with contract requires a Plaintiff to demonstrate: (1) the plaintiff's existing or reasonable expectation of economic advantage or benefit; (2) the defendant's knowledge of the plaintiff's expectancy; (3) wrongful and intentional interference with that expectancy by the defendant; (4) a reasonable probability that the plaintiff would have received the anticipated economic advantage absent such interference; and (5) damages resulting from the defendant's interference. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1167 (3d. Cir.1993). Plaintiff has failed to set forth facts sufficient to support such a claim. Plaintiff alleged only that the Multicare Defendants removed Ms. Knight from her care. Plaintiff does not allege any reasonable expectation of her own economic advantage, that the Multicare Defendants were aware of her expectation, that Plaintiff would have received any economic benefit had they not interfered, nor does she articulate any damages, other than the cost that Ms. Knight incurred. Even the most liberal reading of the facts alleged in the complaint simply does not support a claim for tortious interference of contract, particularly here, where the Multicare Defendants have submitted the Vanarelli power of attorney, which contains a revocation of the Plaintiff's power of attorney. Because Plaintiff has not set forth any evidence of damages that she suffered, the claim must be dismissed.

To the extent Plaintiff sought to assert a claim pursuant to 42 U.S.C. § 1983 against the Multicare Defendants, any such claim must also fail. "A Section 1983 action has two essential

elements: 1) that the conduct complained of was committed by a person acting under color of state law; and 2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *C.N. ex rel. J.N. v. Ridgewood Bd. of Ed.*, 319 F.Supp.2d 483, 490 (D.N.J. 2004).  Although Plaintiff asserts in her opposition to the Multicare Defendants' motion to dismiss that the Multicare Defendants acted in concert with state officials and therefore acted under the color of law, Plaintiff fails to asserts any factual allegations in the complaint indicating how the Multicare Defendants deprived Plaintiff of any rights, privileges or immunities provided by the Constitution or other federal laws.

Finally, Plaintiff's motion for default judgment as to the Multicare Defendants must be dismissed because Plaintiff failed to effectuate proper service on these defendants.  *See U.S. v. One Toshiba Color Television*, 213 F.3d 147, 156 (3d Cir. 2000) (stating that "entry of a default judgment without proper service of a complaint renders that judgment void").  It is clear from the record that Plaintiff has failed" to comply with the rules of service set forth in Federal Rule of Civil Procedure 4 ("Rule 4").

Rule 4(h) provides that service upon a domestic or foreign corporation, such as New Jersey Multicare Center of Workman's Circle, Inc. ("Multicare"), requires delivery of a copy of the summons and complaint "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires – by also mailing a copy of each to the defendant" or process requirements as described in Rule 4(e)(1). Fed.R.Civ.P. 4(h). Rule 4(e)(1) allows service in accordance with the "law of the state in which the district court is located or in which service is effected," which in this case is New Jersey.  Fed.R.Civ.P. 4(e)(1).  New Jersey

law requires that service of the summons and complaint upon a corporation must be made personally on an officer or other person authorized to receive service of process on behalf of the corporation. See N.J. Ct. R. 44-4(a)(6).

Rule 4(e) provides that service upon an individual is effectuated by: (1) "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," which in this case is New Jersey; or (2) by "delivering a copy of the summons and of the complaint to the individual personally," or by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," or by "delivering a copy of each to an agent authorized by appointment or by law to receive service of process."   Similarly, New Jersey law provides that service upon an individual over the age of fourteen is effectuated "by delivering a copy of the summons and complaint to the individual personally, or by leaving a copy thereof at the individual's dwelling place or usual place of abode with a competent member of the household of the age of 14 or over then residing therein, or by delivering a copy thereof to a person authorized by appointment or by law to receive service of process on the individual's behalf."   New Jersey Court Rule 4.4.

In this case, after filing the original complaint Plaintiff filed a single summons, and under the instruction to list the name and address of Defendant, Plaintiff simply entered: "All listed Defendants." (Summons filed October 20, 2006 [docket item 5]).  On a separate page Plaintiff listed the names of the Defendants, but did not provide addresses.  (*Id.*)  After filing the amended complaint, Plaintiff filed a second summons, again identifying "ALL LISTED DEFENDANTS" as identified on an attached rider, and again, without addresses.  (Summons filed January 18,

2007 [docket item 11]).

The process receipts indicate Plaintiff provided the same address for both Negry and Multicare: 225 West Jersey Street, Elizabeth, New Jersey.  (Receipts of Summons Executed on Kathy Negry [docket item 15-9], and "Multi Care Nursing Home" [docket item 65, at 4]).  Copies of the summons and complaint for both Negry and Multicare were served on the Director of Nursing at Emora Hills' nursing home facility.  Because the Emora Hills' nursing home is not Negry's dwelling or usual place of abode, and there is no evidence that the Director of Nursing is "an agent authorized by appointment or by law to receive service of process" for Negry, she has not been properly served.  Likewise, because the Director of Nursing at Emora Hills is not an officer, a managing or general agent or an agent authorized by appointment or by law to receive service of process for Multicare, it was not properly served either.  Therefore, Plaintiff's request for default judgment against the Multicare Defendants must be denied.

Accordingly, all claims against the Multicare Defendants are dismissed.


**D.      Defendant Vanarelli's Motion to Dismiss**

Defendant Vanarelli also filed a motion to dismiss pursuant to Rule 12(b)(6).  Vanarelli contends that Plaintiff has only asserted "conclusory and non-specific allegations of fraud, conspiracy and civil rights violations" without asserting any specific facts, events or circumstances that would justify and support any cognizable claim for relief."  (Vanarelli Br. at 2).

Plaintiff submitted written opposition to the motion.  First, Plaintiff asserts that Defendant Vanarelli conspired with the Union County Prosecutor Defendants to deny Plaintiff

due process by placing a lien on Plaintiff's property and bank account without providing Plaintiff notice of those actions.  (Pl. Response to Motion, Docket item 85-2, at 2).  Plaintiff further asserts Vanarelli "denied Plaintiff[']s liberty by interloping upon and inducing Breach of [the] Contract" between Plaintiff and Ms. Knight.  (*Id.*)  Plaintiff also contends the Union County Prosecutor Defendants provided Vanarelli confidential discovery information and that the Union County Prosecutor Defendants appeared with Vanarelli in civil court, combining civil and criminal cases, which Plaintiff contends violated her rights to due process and equal protection, as provided by the 14th Amendment.  (*Id.*)  Plaintiff points to "[t]he conduct of both [the Union County Prosecutor Defendants] and [Vanarelli] in civil court in meetings of pretrial with Judge Malone as just one aspect of overt circumstantial evidence of [the alleged] conspiracy."  (*Id.* at 3).  Finally, Plaintiff contends the Court should not dismiss her fraud claim because two independent handwriting experts have determined the signature of Ms. Knight was forged, and that "Beverly Knight's statements and test[i]mony at the trial ackno[wledge] items she had so she could not have been aware of the elements of the suit."  (*Id.*)

In the original complaint, Plaintiff alleges that Vanarelli had Ms. Knight "deemed insane before the courts and had himself appointed power of attorney" despite the existence of an expert opinion.  (Complaint at 5).  Plaintiff also asks the Court to order Vanarelli to "refrain from further tortious interference in representing Beverly Knight" and "pay back all of Beverly Knight[']s money from checks he wrote to himself."  (Complaint at 6, ¶ 9).  Plaintiff also asked the Court to sanction Vanarelli for abuse of process.  (*Id.*)

In the amended complaint, Plaintiff alleges Vanarelli "engaged in fraud with respect to the signature of Beverly Knight on a complaint to which he submitted to the courts in . . .

collaboration with Theodore Romankow, his agents, and persons unknown to [P]laintiff." (Am. Complaint at 1-2, ¶ 3). Plaintiff also alleges that Vanarelli conspired with Romankow and his agents and the Devereux Foundation to "deprive [Plaintiff] of her civil rights" in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO Act"). (*Id.* at 2, ¶ 5). Plaintiff contends Vanarelli and the Union County Prosecutor Defendants engaged in mail and wire fraud, asserting that the Union County Prosecutor's Office "sent and received plaintiff's personal information via phone and fax for the purpose of perpetuating the conspiracy with in (sic) the realm of their agents and other defendants[.]" (*Id.*) Plaintiff also asserts Vanarelli was acting as an agent of Romankow and the Hillside Police Department and "under the color of authority" and "thought their obvious fraud . . . proximately caused or contributed to Plaintiff's injury becoming more severe and sustaining unnecessary injuries and damages." (*Id.* at ¶ 9). Finally, Plaintiff asserted that Vanarelli's forgery along with the disregard of Plaintiff's rights by Romankow and his agents caused Plaintiff harm, and therefore she seeks compensation for her pain and suffering, "Gross Mental and emotional distress" (sic), loss of wages, extreme financial instability, and public humiliation and defamation. (*Id.* at 3 ¶ 10. A).

First, the claims filed on behalf of Ms. Knight in the original complaint against Vanarelli are dismissed because, as discussed above, Plaintiff does not have standing to file claims on behalf of Ms. Knight. Contrary to Plaintiff's argument, revocation of power of attorney in New Jersey does not require notice to the attorney-in-fact. *See* N.J.S.A. 46:2B-8.10.

Turning to the amended complaint, Plaintiff's allegation that Vanarelli and the Union County Prosecutor Defendants engaged in mail and wire fraud in violation of the RICO Act also fails because Plaintiff did not plead facts sufficient to support such a claim. To establish a RICO

claim a plaintiff

> must allege 1) the existence of an enterprise affecting interstate commerce; 2) that
> the defendant was employed by or associated with the enterprise; 3) that the
> defendant participated, either directly or indirectly, in the conduct of the affairs of
> the enterprise; and 4) that he or she participated through a pattern of racketeering
> activity that must include the allegation of at least two racketeering acts.

*Shearin v. E.F. Hutton Group Inc.*, 885 F.2d 1162, 1165 (3d Cir.1989), *rev'd on other grounds*

*Beck v. Prupis*, 529 U.S. 494 (2000).  In the amended complaint Plaintiff merely "cites [m]ail

and wire fraud," as the basis for the claim, and states that the "Union County Prosecutor[']s

Office sent and received plaintiff's personal information via phone and fax, for the purpose of

perpetuating the conspiracy with in the realm of their agents and other defendants[.]" (Am.

Complaint at 2, ¶ 6).  Plaintiff has not alleged any facts to establish that Vanarelli was employed

by or associated with a criminal enterprise affecting interstate commerce, or that Vanarelli

participated through a pattern of racketeering activity evidenced by at least two predicate acts.

Therefore, Plaintiff's RICO claim against Vanarelli must be dismissed.

Plaintiff's allegation that Vanarelli was "acting under the color of authority" to "deprive

her of her civil rights" also fails because Plaintiff did not plead any facts to support these

conclusory allegations.  To support the claim that Vanarelli deprived Plaintiff of her civil rights,

for which Plaintiff can seek relief pursuant to 42 U.S.C. § 1983, Plaintiff must demonstrate that

Vanarelli, "while acting under color of state law, deprived [her] of a right secured by the

Constitution or the laws of the United States."  *Shuman ex rel. Shertzer v. Penn Manor School*,

422 F.3d 141, 146 (3d Cir. 2005).  Although "[i]t is well-established that a private party's

conduct may be held attributable to the state and subject to § 1983 liability when a 'symbiotic

relationship' exists between the acting party and the state," Plaintiff has failed to plead any facts,

beyond her conclusory allegation, demonstrating that Vanarelli acted as a "'joint participant' in the challenged activity with the state." *See Reitz v. County of Bucks*, 125 F.3d 139, 147 (3d Cir. 1997) (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)).  Moreover, Vanarelli is a private attorney engaged in the practice of law.  Although he may have been appointed by a court, a court-appointed attorney "does not act under the color of state law when performing a lawyer's traditional functions as counsel[.]"  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981), *aff'd*, 19 F.3d 645 (3rd Cir 1994).  *See also Williams v. Dark*, 844 F.Supp. 210, 213 (E.D. Pa. 1993).  Plaintiff has not alleged any facts to demonstrate that Vanarelli was acting outside the scope of that which is considered traditional function of counsel.  Therefore, even applying the most lenient standard, Plaintiff simply has not asserted facts sufficient to give rise to a claim under 42 U.S.C. § 1983.

Likewise, Plaintiff has failed to plead facts sufficient "to raise a reasonable expectation that discovery will reveal evidence" that she is entitled to relief for her fraud claim.  *See Bell Atlantic*, 127 S. Ct. at 1965.  In order to establish a fraud claim under New Jersey law, a plaintiff must demonstrate: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by that person; and (5) resulting damages."  *Atlantic City Racing Ass'n v. Sonic Financial Corp.*, 90 F.Supp.2d 497, 504 (D.N.J. 2000).  Plaintiff has not made clear, in either the original complaint or the amended complaint, what material misrepresentation Vanarelli made beyond her allegation that Vanarelli forged Ms. Knight's signature on the document granting him power of attorney and her conclusory allegation that he engaged in mail and wire fraud.  Plaintiff has not asserted a particular material representation

beyond the alleged forgery, she has not pled any facts to demonstrate that Vanarelli had an intention that Plaintiff rely on any material misrepresentation, nor has Plaintiff asserted that she relied on any misrepresentation.  Moreover, Plaintiff has not identified any damages that resulted from the fraud.  The statement that "obvious fraud . . . proximately caused or contributed to Plaintiff's injury becoming more severe and sustaining unnecessary injuries and damages" does not meet the requirement.  Simply put, Plaintiff has failed to set forth any factual allegations to demonstrate the elements necessary to establish a *prima facie* claim of fraud.  Accordingly, the fraud claim is dismissed.

Finally, to the extant Plaintiff seeks to assert an independent claim of forgery, such claim is also dismissed.  As Vanarelli points out in his brief, Plaintiff fails to demonstrate any harm arising from the alleged forgery and therefore lacks standing to bring such a claim.  The allegations set forth in the original complaint and the amended complaint do not demonstrate a redressable injury suffered by Plaintiff, as required to establish standing, and moreover, the facts alleged fail to satisfy the plausibility standard set forth in *Bell Atlantic*, 127 S. Ct. at 1968. Therefore the forgery claim is also dismissed.

Accordingly, the claims in the complaint and amended complaint against Vanarelli are dismissed.

### E. The Prosecutor Defendants

The Prosecutor Defendants have also filed a motion to dismiss pursuant to 12(b)(6).  The Prosecutor Defendants assert the claims against them in the original complaint and amended complaint relate to the prosecution of Plaintiff for her theft by unlawful taking of funds from Ms.

Knight and argue that Plaintiff fails to plead any facts to support any cause of action against the Prosecutor Defendants.   The Prosecutor Defendants also argue the Union County Prosecutors Office and Romankow are shielded from civil liability by absolute and qualified prosecutorial immunity, and Defendants Kim, Nechamkin, and Gagliardi shielded from civil liability by qualified prosecutorial immunity.

Plaintiff submitted written opposition asserting countless allegations not plead in the original complaint or amended complaint that cannot be considered in deciding a motion to dismiss pursuant to Rule 12(b)(6).   In review of a motion to dismiss the Court considers the facts as pled in the complaint or an amended complaint.   Because Plaintiff in this case is *pro se*, the Court has considered the amended complaint as a supplemental complaint and considered the facts alleged in both submissions.   However, insufficiencies in the claims as pled cannot be cured by a brief submitted in opposition to the Defendants' motion to dismiss.   *See Ranke v. Sanofi-Synthelabo, Inc.*, 436 F.3d 197, 206 (3d Cir.2006) (explaining plaintiffs failed to a formal motion for leave to amend and explaining that if plaintiffs "had been in possession of facts that would have augmented their complaint and possibly avoided dismissal, they should have pled those facts in the first instance" ).   Therefore, Plaintiff's argument in opposition to the motion that "[t]here are many issues of fact that remain to be adjudicated by a jury trial in this case," does not cure the defective pleading.

The facts as alleged in the original complaint and the amended complaint simply do not support any cause of action.   Plaintiff merely asserts sweeping conclusions without asserting a sufficient factual basis to "plausibly suggest" that Plaintiff is entitled to relief for any of her claims against the Prosecutor Defendants.   Furthermore, Plaintiff's argument that Defendants

Romankow, Kim, and Gagliardi are not immune from civil liability is simply incorrect.

The law is clear that prosecutors enjoy absolute immunity for all acts performed in a "quasi-judicial" role. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). This immunity extends to actions by a prosecutor "initiating a prosecution and in presenting the State's case." *Id.* at 430-431; *Burns v. Reed*, 500 U.S. 478, 492 (1991). This absolute immunity also includes "actions preliminary to the initiation of a prosecution and actions apart from the courtroom[.]" *Buckley v. Fitzsimmons*, 509 U.S. 259, 272 (1993) (quoting *Imbler*, 424 U.S. at 431, n. 33). "Immunity extends to 'the preparation necessary to present a case,' [which] includes the 'obtaining, reviewing, and evaluation of evidence.'" *Kulwicki v. Dawson*, 969 F.2d 1454, 1463-64 (3d Cir.1992) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1414 (3d Cir. 1991)).

The allegations presented by Plaintiff in the original complaint and amended complaint against the Union County Prosecutors Office and Romankow relate to the prosecution of Plaintiff for her theft by unlawful taking of funds from Ms. Knight. Plaintiff's allegation that the Prosecutor Defendants initiated criminal charges against her for purely political motives does not overcome the immunity. *Kulwicki*, 969 F.2d at 1463-64 (explaining prosecutors are "absolutely immune" when making the decision to prosecute, "even where he acts without a good faith belief that any wrongdoing has occurred"). Because the Union County Prosecutors and Romankow are absolutely immune from acts performed in a "quasi-judicial" role, any such claims must be dismissed.

Investigative and administrative actions taken in the course of a prosecution are protected by qualified immunity. *Burns*, 500 U.S. 483-84; *Kulwicki*, 969 F.2d at 1463. "[Q]ualified immunity protects official action, if the officer's behavior was 'objectively reasonable' in light of

the constitutional rights affected." *Giuffre v. Bissell*, 31 F.3d 1241, 1252 (3d Cir. 1994) (quoting

*Brown v. Grabowski*, 922 F.2d 1097, 1109 (3d Cir. 1990)).  This protection extends "to all but

the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S.

335, 341 (1986).

To determine "whether a defendant is entitled to the dismissal of an action based on the

defense of qualified immunity, [the Court] must first determine 'whether the plaintiff's claims

make out a violation of a constitutional right.'" *Michaels v. New Jersey*, 222 F.3d 118, 121 (3d

Cir. 2000) (quoting *Assaf v. Fields*, 178 F.3d 170, 174 (3d Cir.1999)).  If the Court finds that "the

plaintiff has alleged a violation of a constitutional right, we must then determine whether the

defendant violated a clearly established right such that a reasonable official in the defendant's

position would know that his conduct was unlawful." *Id.*

Neither Plaintiff's original complaint nor her amended complaint clearly identify those

actions Plaintiff is challenging.  Therefore, to the extent Plaintiff asserts that Defendants Kim,

Nechamkim, and Gagliardi – detectives in the Union County Prosecutor's Office – or the Union

County Prosecutor's Office or Romankow in their investigative or administrative efforts have

violated Plaintiff's rights as protected by the constitution and federal law, those claims must be

dismissed based on a defense of qualified immunity.  In short, Plaintiff has not set forth any facts

to demonstrate "that a reasonable official in the defendant's position would know that his

conduct was unlawful." *See Michaels v. New Jersey*, 222 F.3d at 121.  Accordingly, Plaintiff's

claims asserting constitutional violations or violations of federal law in the Prosecutor

Defendants' investigation of Plaintiff must be dismissed.

Finally, Plaintiff's RICO claim against the Prosecutor Defendants must be dismissed

because "municipal entities are immune from suit under applicable federal and state [RICO] law[s]." *Kadonsky v. New Jersey*, 188 Fed. Appx. 81, 84 (3d Cir. 2006); *Genty v. Resolution Trust Group*, 937 F.2d 899, 914 (3d Cir. 1991). Moreover, as discussed above, Plaintiff has not alleged any facts to establish that the Prosecutor Defendants were employed by or associated with a criminal enterprise affecting interstate commerce, or that the Prosecutor Defendants participated through a pattern of racketeering activity evidenced by at least two predicate acts. Therefore, Plaintiff's RICO claim must be dismissed.

Accordingly, the original complaint and amended complaint are dismissed as to the Prosecutor Defendants.

**F. The Hillside Defendants**

The Hillside Defendants filed a motion for judgment on the pleadings relying on the arguments set forth in the briefs submitted by the Prosecutor Defendants, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff did not file opposition to the motion.

The allegations and claims relating to the Hillside Defendants in the original complaint and amended complaint arise from the Hillside Defendants' investigation and arrest of Plaintiff for her theft by unlawful taking of funds from Ms. Knight. As discussed above, the Hillside Defendants have qualified immunity from civil prosecution for their investigative actions. Because Plaintiff has not set forth any facts to demonstrate "that a reasonable official in the defendant's position would know that his conduct was unlawful," her claims against the Hillside Defendants must be dismissed. *See Michaels v. New Jersey*, 222 F.3d at 121.

The Hillside Defendants also submitted a letter asserting that Plaintiff crossed their names

off of her second motion requesting default judgment, and therefore presumed that motion to be

withdrawn as to the Hillside Defendants.  Plaintiff has not opposed.  Therefore, because Plaintiff

removed the names of each of the Hillside Defendants from her second, and signed, motion,

default will not be entered as to the Hillside Defendants and the Court will terminate Plaintiff's

motion for entry of default as to the Hillside Defendants.

### G. The Catholic Charities Defendants

The Catholic Charities Defendants have moved to dismiss the claims filed against them,

asserting that Plaintiff has failed to state a claim for which relief may be granted and that

Catholic Charities and Massenberg, as adult protective service providers, are immune from

liability pursuant to N.J.S.A. 52:27D-409(e).  Plaintiff did not file opposition to the motion.

In the original complaint Plaintiff asserts that Massenberg "engaged in tort[i]ous

interference by helping to remove Bevery Knight, then allegedly helped her to find another

attorney . . . Donald Vanarelli."  (Complaint at 5).  Plaintiff also demands that "the Archdiocese

of New Jersey be notified of actions taken under their name regarding Yo[rlano] Massenberg."

(Complaint at 6, ¶ 11).  The Catholic Charities Defendants are not mentioned in the amended

complaint.

The allegation of tortious interference, without factual allegations beyond that

Massenberg "helped" in the removal of Ms. Knight, presumably from Plaintiff's home, and that

Massenberg assisted Ms. Knight in finding an attorney, simply does not provide the factual basis

necessary to survive the plausibility standard set forth in *Bell Atlantic*.  See *Bell Atlantic*, 127 S.

Ct. at 1965-66.

Additionally, the Catholic Charities Defendants are also immune from liability pursuant

to N.J.S.A. 52:27D-409(e), which provides that

> A county adult protective services provider and its employees are immune from
> criminal and civil liability when acting in the performance of their official duties,
> unless their conduct is outside the scope of their employment, or constitutes a
> crime, actual fraud, actual malice, or willful misconduct.

Massenberg is a social worker licensed by the state of New Jersey, employed by Catholic

Charities (Massenberg Affidavit at ¶ 2),  which is a New Jersey not-for-profit social service

agency.  (Fowles Affidavit at ¶ 4).  Therefore, Massenberg and Catholic Charities are immune

from civil or criminal liability when acting in the performance of their official duties.  N.J.S.A.

52:27D-409(e).  The allegations in the complaint appear to assert claims stemming from

Massenberg's involvement with Ms. Knight in the course of her official duties as a social worker

and employee of Catholic Charities.  Plaintiff did not allege in either the original complaint or the

amended complaint that in assisting Ms. Knight Massenberg acted outside the scope of her

employment, or that her conduct constitutes a crime, fraud, malice, or wilful misconduct.

Accordingly, the claims against the Catholic Charities Defendants must be dismissed.


## H.  The Devereux Defendants


Finally, the Devereux Defendants[3] filed an amended motion to dismiss[4] pursuant to Rule

---

[3]Footnote 1 of the Devereux Defendants' brief in support of their amended motion to
dismiss states that Buchanan Ingersoll – counsel for the Devereux Defendants – no longer
represents Heather Hanlon.  However, our local rules require that unless other counsel is
substituted, leave of court must be obtained to withdraw as counsel.  L. Civ. R. 102.1.  Review of
the record indicates neither notice of substitution of counsel for Ms. Handlin, nor request for
leave to be relieved as counsel have been filed.  Therefore, the Court considers the amended

12(b)(6), arguing Plaintiff has failed to state a claim for which relief can be granted; pursuant to

Rule 12(b)(5), because Plaintiff failed to effect proper service; and pursuant to Rule 12(h)(3),

because Plaintiff failed to exhaust her administrative remedies.  The Devereux Defendants also

oppose Plaintiff's application for entry of default, arguing Plaintiff never effectuated proper

service on any of the Devereux Defendants.

Plaintiff filed opposition to the motion arguing that: (1) she properly served the Devereux

Defendants; (2) "the Defendants" gave Plaintiff's personal records to the Union County

Prosecutor's Office, in violation of Plaintiff's "Constitutional right to privacy"; and (3) Plaintiff

was "in contact with the corporation's grievance procedure and was advised that there was no

other remedy for her," and that nevertheless, she is not required to exhaust all administrative

remedies.  (Pl. Br. in Opposition to Devereux Motion [docket item 104, p. 7-10] at ¶¶ 1,3,4).

As best the Court can determine, it appears that Plaintiff is asserting claims of hostile

work environment and discrimination based on her race and gender pursuant to Title VII.

(Complaint at 5).  Plaintiff also claims that "plaintiff's Job" conspired with the Union County

Prosecutor's Office by providing them "personal records."  (*Id.*)  In the original complaint,

Plaintiff demands that she "be returned to work," and that seeks "damages awarded in

accordance with [T]itle VII and persons with disabilities act."  (*Id.* at ¶¶ 5, 8).  In the amended

motion to dismiss as filed on behalf of Ms. Hanlon.

[4]The Devereux Defendants filed their original motion to dismiss on August 8, 2007, which Plaintiff did not oppose.  In an effort to consolidate review of the several motions filed in this matter, the Court ordered all dispositive motions to be filed no later than January 11, 2008. On January 8, 2008, the Devereux Defendants filed an amended motion to dismiss.  Plaintiff submitted opposition to the substance of the amended motion to dismiss, but did not oppose the filing of the amended motion. Therefore, this opinion addresses the issues presented in the amended motion to dismiss and the opposition filed thereto.

complaint, Plaintiff demands that the Devereux Defendants "be charged under" the RICO Act, asserting they conspired with Vanarelli, Romankow and "his agents" to "deprive her of her civil rights."  (Amended Complaint at 2, ¶ 5).  Plaintiff also rescinds her demand to be returned to work and asks only that her "medical insurance be reenacted until the courts have decided in judgment."  (*Id.* at ¶ 7).

First, Plaintiff's claims relating to a conspiracy must be dismissed because she has failed to assert in her original or amended complaint facts sufficient to support a claim.  Simply asserting that "the Defendants" gave Plaintiff's "personal records" to the Union County Prosecutor's Office does not meet the plausibility standard set forth in *Bell Atlantic.  See Bell Atlantic*, 127 S.Ct. at 1968.  The allegations in the original and amended complaint do not provide enough facts "to raise a reasonable expectation that discovery will reveal evidence" that Plaintiff is entitled for relief for her claim of conspiracy or any claim related to her allegation of a violation of her right to privacy.  *See id.*. at 1965.

Plaintiff's Title VII claims must also be dismissed because she failed to exhaust her administrative remedies.  Contrary to Plaintiff's argument, she is required to exhaust her administrative remedies before filing a claim pursuant to Title VII.  *See Atkinson v. LaFayette College*, 460 F.3d 447, 453 (3d Cir. 2006).  Because it is undisputed that Plaintiff did not file a claim of discrimination with the EEOC or similar state agency before initiating this lawsuit, Plaintiff has not exhausted her administrative remedies and therefore, her Title VII discrimination claims must be dismissed.

Furthermore, Title VII does not provide for individual liability.  *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1077-78 (3d Cir. 1996).  Accordingly, to the extent Plaintiff

seeks to assert a Title VII discrimination claim against Brenda Brunisholz and Heather Handlon, such claims are also dismissed.

Additionally, Plaintiff has failed to demonstrate that she effectuated proper service on any of the Devereux Defendants.  As noted above, the party against whom default judgment is requested must have been properly served with process.  *See One Toshiba Color Television*, 213 F.3d at 156.  Here, it is clear from the record that Plaintiff has failed to comply with the rules of service set forth in Rule 4, and therefore, the motion for default judgment against the Devereux Defendants must be denied.

As discussed above, service upon a corporation, such as the Devereux Foundation, requires delivery a copy of the summons and complaint "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires – by also mailing a copy of each to the defendant" or process requirements as described in Rule 4(e)(1). Fed.R.Civ.P. 4(h). Service upon an individual is effectuated by "delivering a copy of the summons and of the complaint to the individual personally," or by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," or by "delivering a copy of each to an agent authorized by appointment or by law to receive service of process."   Rule 4(e); New Jersey Court Rule 4.4.

The process receipts indicate Plaintiff provided one address for all three Devereux Defendants: 201 Willowbrook Boulevard in Wayne, New Jersey.  (Receipts of Summons Executed on "Brunishuiz" [docket item 24], Handlon [docket item 25], and the Devereux Foundation [docket item 65, at 4]).  Copies of the summons and complaint for all three of the

Devereux Defendants were served on an administrative assistant at the Devereux Foundation's office in Wayne, New Jersey. Because this is not dwelling or usual place of abode of either Brenda Brunisholz or Heather Handlon, and there is no evidence that the administrative assistant[5] is "an agent authorized by appointment or by law to receive service of process" for either individual, the service is clearly improper and therefore, neither Brenda Brunisholz nor Heather Handlon have been properly served. Likewise, because an administrative assistant[6] is not an officer, a managing or general agent or an agent authorized by appointment or by law to receive service of process, the Devereux Foundation was not properly served.

Accordingly, because Plaintiff has not effectuated proper service on the Devereux Defendants, her request for default judgment against the Devereux Defendants must be denied. Furthermore, as Plaintiff has not exhausted her administrative remedies and has not otherwise pled any claims against the Devereux Defendants for which relief can be granted, all claims against the Devereux Defendants must be dismissed.

**I. Motion for Default as to Remaining Defendants**

---

[5]The receipts indicate that on May 25, 2007, copies of the summons and complaint issued for Brenda Brunisholz and Heather Handlon were served on Kimberly Lee, an administrative assistant at the Devereux Foundation. (Receipts of Summons Executed on "Brunishuiz" [docket item 24] and Handlon [docket item 25]).

[6]The receipt of summons for the Devereux Foundation indicates that Plaintiff instructed the United States Marshals Service to serve the Devereux Foundation's secretary located on the second floor. (Receipt of Summons Executed on the Devereux Foundation [docket item 65, at 4]). On August 17, 2007, a copy of the summons and complaint addressed to the Devereux Foundation was served on "Kimberlee Jones," an administrative assistant at the Devereux Foundation. (Receipt of Summons Executed on the Devereux Foundation [docket item 65, at 4]).

Finally, Plaintiff has also moved for default judgment as to Katherine Stalker, Owen Thompson, Susan Lubin, American Express "Aka Ameriprise," "Yahseeda" Johnson, Simone S. Marta, and the parents of Jasmine Glass.  [Docket item 54 and 56].

Rule 55(b)(2) of the Federal Rules of Civil Procedure governs the Court's entry of default judgment.  As discussed above, the party against whom default judgment is requested must have been properly served with process.  Fed.R.Civ.P. 55(b)(2); *One Toshiba Color Television*, 213 F.3d at 156.  Furthermore, before a default judgment may be entered by the Court, the moving party must have obtained an entry of default pursuant to Fed.R.Civ.P. 55(a).  10A Charles Alan Wright, et al., Federal Practice & Procedure § 2682 (3d ed. 2007).  Although Rule 55 (a) "refers only to the clerk's entry of default, it is undisputed that the court may impose a default as a sanction."  *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 917 n. 11 (3d Cir.1992) ; *see also* 10A Federal Practice & Procedure § 2682 (explaining that "[t]he fact that Rule 55(a) gives the clerk authority to enter a default is not a limitation on the power of the court to do so").

However, the Court also has discretion to determine whether or not default against a defendant is appropriate.  *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984); 10A Wright, et al., Federal Practice & Procedure § 2682 (explaining "court[s] should exercise discretion in deciding whether or not to order a default").  "A party seeking default judgment is not entitled to such relief as a matter of right, even where the defendant was served with process, and where the default has been noted pursuant to Fed.R.Civ.P. 55(a)."  *Tucker v. I'Jama*, Docket No. 04-277, 2008 WL 2345770, at *2 (D.N.J. June 3, 2008).  Indeed, the Third Circuit has repeatedly made clear that District Courts' discretion to enter default judgment "is not without limits" and the Circuit Court has expressed a "preference that cases be disposed of on the merits whenever

practicable." *Hriz v. Woma Corp.*, 732 F.2d 1178, 1191 (3d Cir. 1984).

In determining whether to enter default judgment, the Court may consider the following factors: the potential amount of damages; whether issues of material fact or substantial public concern are implicated; whether the default is primarily technical; whether the moving party has been substantially prejudiced by the delay involved; whether the grounds for default are clearly established or in doubt; whether the default was attributable to good faith, mistake, or excusable neglect; and whether the court may later be obliged to set aside the default. *Franklin v. Nat'l Maritime Union of Am.*, No. 91-0480, 1991 WL 131182, at *1 (D.N.J. July 16, 1991), aff'd, 972 F.2d 1331 (3d Cir.1992) (citing 10A Wright, et al., Federal Practice & Procedure § 2685).

Here, the motion for entry of default judgment against Katherine Stalker, Owen Thompson, Susan Lubin, American Express "Aka Ameriprise," "Yahseeda" Johnson, Simone S. Marta, and the parents of Jasmine Glass must be denied because Plaintiff has failed to demonstrate that she has effectuated proper service on any of these defendants.

The process receipts for Katherine Stalker and Owen Thompson indicate that Plaintiff provided the address of the Devereux Foundation in Wayne New Jersey. (Receipts of Summons Executed on Katherine Stalker and Owen Thompson [docket item 65, at 1-2]). The receipts state that Stalker and Thompson were not employed by the company at the time service was attempted and the summons and complaints were served on Kimberlee Jones, an administrative assistant at the Devereux Foundation. As discussed above, this does not constitute proper service on an individual defendant.

The process receipt for American Express, aka Emeriprize, indicates that Plaintiff instructed the United States Marshals Service to serve the secretary, Susan Lubin. (Receipt of

Summons Executed on American Express [docket item 31]).  As discussed above, service on a secretary does not constitute proper service on a corporation.

 Service on Susan Lubin, Yasheeda Johnson, and Simone Marta is also improper because it was not timely.  Although the process receipts indicate that Susan Lubin and Simone Marta were personally served and Yasheeda Johnson may have been served by providing copy to a family member at her residence, all three defendants were served more than 120 days after the filing of the amended complaint.  (Receipts of Summons Executed on Susan Lubin [docket item 32], Simone Marta [docket item 65 at 3], and Yasheeda Johnson [docket item 30]).  Because the service on these defendants was not timely, service was not properly effectuated.  Fed. R. Civ. P. 4(m).

 Finally, the process receipt for the parents of Jasmine Glass states that after three attempts, the Marshals Service was not able to effectuate service at either of the two addresses provided by Plaintiff.  (Receipt of Unexecuted Summons on the parents of Jasmine Glass [docket item 62]).

 Therefore, because proper service was not effectuated on any of these defendants, default judgment cannot be entered against them.  Furthermore, after considering the relevant factors, the Court has determined that a default judgment would not be appropriate in this case.  Plaintiff's original complaint and amended complaint fail to set forth a factual basis to support a claim against any of these defendants, therefore there is no potential for damages, and Plaintiff has not been prejudiced by the delay.

 Accordingly, although none of these defendants have either responded to the motion, or submitted an answer to the original or amended complaints, Plaintiff's motion for default

judgment as to these defendants is denied.

**III.  Conclusion**

  For the reasons discussed above, the Court grants the seven motions to dismiss and denies

Plaintiff's motions for default.

  s/ Stanley R. Chesler   
Stanley R. Chesler,
United States District Judge

Dated: June 30, 2008